# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| **OLD UNITED CASUALTY COMPANY,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 2:15-CV-43-DBH** |
| | ) | |
| **FLOWERS BOATWORKS** AND | ) | |
| **UNDERWATER LIGHTS USA LLC,** | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO TRANSFER

This case poses the question whether Maine has personal jurisdiction in a lawsuit against a Florida manufacturer of underwater lights for boats. The Florida manufacturer holds itself out on the internet and in magazines as a worldwide leader in boat accessories, but it sells its products, including the underwater light at issue in this case, through a Georgia distributor. A New York consumer commissioned a Maine boat-builder to build him a boat that incorporated the Florida manufacturer's underwater lights. The boat ultimately sank in New York waters, allegedly because one of the underwater lights was defective. After oral argument held on April 20, 2016, I conclude, first, that this court lacks personal jurisdiction over the defective product claim against the manufacturer but, second, that I can transfer the claim to the Southern District of Florida.

## FACTS

Michael Bonner, a resident of New York (Exs. 1, 2 of Pl.'s Resp. (ECF No. 33)) decided to purchase a new boat.  Bonner contracted with Flowers Boatworks in Walpole, Maine, to build a "downeast 'lobster' sportfish style vessel" that included the installation of underwater light fixtures.  First Am. Compl. (Am. Compl.) at 2 (ECF No. 22).  The underwater light fixtures were manufactured by the defendant Underwater Lights USA LLC (Underwater Lights).  Id. at 2-3.  Flowers Boatworks bought the underwater light fixtures from Maine-based retailer Hamilton Marine Supply and subsequently installed them in the boat.  Id.  Hamilton Marine had purchased the lights from Hella, Inc. (Hella), a distributor located in Georgia.  Hella had purchased them from Underwater Lights.  Id. at 1.  Flowers Boatworks completed Bonner's vessel in June of 2012, and about two months later Bonner sailed it to Hampton Bays, New York.  Soon after, the boat sank as a result of a hole in the hull caused by corrosion of one of the underwater lights.  Id. at 3.

Old United Casualty Company (Old United) is a Kansas-based property and casualty insurance company.  Id. at 1.  Old United insured Anthony Bonner's boat, paid his claim for the loss, and is subrogated to his rights.  Id. at 1-4.  Old United filed this lawsuit in this court, seeking damages against Flowers Boatworks for negligence, breach of contract, and breach of warranty of workmanlike services, id. at 4-7; and against Underwater Lights for negligence, breach of warranty, and strict liability, id. at 7-11.  Flowers Boatworks is a Maine-based corporation.  Id. at 2.  Underwater Lights is a Florida-based corporation.  Am. Compl. at 2.

Underwater Lights manufactures various lighting products for boats at its Florida facility.  Underwater Lights Dep. (UL Dep.) at 4-5 (ECF No. 35, Ex. 7).[1]  It has approximately $3,200,000 in gross annual sales.  MacDonald Aff. (Ex. B, ECF No. 20) at 4.  It has no presence in Maine and does not regularly contract to supply services or products in Maine or derive substantial revenue from goods or services sold in Maine.  Id. at 3-4.  It has "a long standing business relationship" with Hella in Georgia.  UL Answer to Second Int. (ECF No. 35, Ex. 9) at 3.  Underwater Lights uses Hella to distribute its products nationally.  Id. at 5-6.  In addition to using Hella as a distributor, Underwater Lights has its own sales office in Fort Lauderdale, Florida, that sells to individual customers and retailers both nationally and internationally.  UL Dep. at 14.

Before the sale of the light that ended up in Bonner's boat, Underwater Lights carried out a multi-faceted marketing strategy.  It did not limit itself to any specific region within the United States, and its Fort Lauderdale sales office was set up to handle all its domestic sales.  Id. at 13, 16.  To promote the sale of its products throughout the United States and internationally, Underwater Lights's employees attended various regional and national boat shows.  Id. at 7-10.  Underwater Lights also advertised in national boating magazines *IBI*, *Yachts International*, and *Yachting* to showcase its products to boat owners and boat builders nationwide.  Id. at 12, 15.  (The plaintiff has not provided any evidence that the magazines have subscribers in Maine, or that any of the relevant actors

---

[1] The plaintiff submitted excerpts of the deposition taken from Underwater Lights.  All references to the page numbers of exhibits supplied by parties are the consecutively numbered pages in the exhibits as numbered by ECF rather than the page numbers of the original documents.

in this case are subscribers or viewed any of these advertisements.)  By 2009 Underwater Lights had developed a mailing list of customers so that the company could send out print advertisements for special sales.  Id. at 28.

Like any twenty-first century sales company, Underwater Lights also advertised on its own internet website.  UL Website.  (ECF No 35, Ex. 8). Although customers could not place orders directly by credit card on the website, the site had a "Contact Us" page.  UL Dep. at 17-19.  The "Contact Us" page indicated that potential customers for "worldwide sales" could contact the company's Ft. Lauderdale sales office or could reach out to an email address provided on the page.  Id. at 18.  The page allowed customers to supply information to the company by filling out a form with information such as the customer's location, boat type, etc.  Id.  If customers desired, they could write a custom message at the end of the form to indicate any specific questions or desires to sales representatives.  Id.  The website provided depictions of Underwater Lights's products in use in various locations such as Florida, New York, Massachusetts, Puerto Rico, The Bahamas, and others.  UL Website at 5-8.

As a result of jurisdictional discovery, the plaintiff has uncovered the following two Maine-related transactions by Underwater Lights before the sale and installation of the lights on Bonner's boat: first, an August 2010 delivery of six lamp bulbs to a Miami Florida resort for which Maine's Hamilton Marine was billed $731.88 (there was no explanation for Hamilton Marine's involvement in this Florida delivery), Hamilton Marine Invoice (ECF No. 37, Ex. 14) at 8; UL Dep. at 26-27; second, a March 2012 $300 direct sale of lighting cable to a Maine

customer (Kramp Electronics, Inc., in Seal Cove),  Kramp Emails and Invoice (ECF No. 35, Exs. 10, 11).[2]

### SUBJECT MATTER JURISDICTION AND PROCEDURAL HISTORY

Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Flowers Boatworks has defaulted on the claims against it, and default was entered on June 9, 2015.  (ECF No. 11).  Thereafter, Underwater Lights filed a motion to dismiss the claims against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Def's Mot. (ECF No. 20) at 1.  The parties conducted discovery directed to the personal jurisdiction issue.

### ANALYSIS

"Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution." Bickford v. Onslow Mem'l Hosp. Found., 2004 ME 111, ¶ 10, 855 A.2d 1150, 1155 (citing Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995)).  Therefore, this case is controlled by the United States Constitution.   The plaintiff claims only specific, not general personal jurisdiction.[3]  Pl.'s Resp. at 8.

---

[2] Underwater Lights also made two direct sales into Maine *after* the completion of Bonner's boat. It sold two underwater hull lights directly to Billings Diesel and Marine of Stonington, Maine, in March of 2013.  Billings Invoice (ECF No. 37, Ex. 14) at 2.  It also sold three underwater hull lights directly to Robert Tetrault of Portland, Maine, in April of 2014.  Tetrault Invoice (ECF No. 35, Ex. 13).  Because these sales did not occur either "before [or] surrounding the accrual of the cause of action," they do not factor into my analysis.  See Harlow v. Children's Hosp. 432 F.3d 50, 60-61 (1st Cir. 2005).

[3] The cases recognize two forms of personal jurisdiction: "general or all-purpose jurisdiction" and "specific or conduct-linked jurisdiction." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014). General jurisdiction allows a plaintiff to litigate against a defendant when the defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'" Id. (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)).  It is not applicable here.

**(1) Burden of Proof**

The plaintiff has the burden of proof to demonstrate personal jurisdiction. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). Like the parties, I apply the First Circuit-approved "prima facie" standard and have not conducted an evidentiary hearing. Foster-Miller, 46 F.3d at 145-147; United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001). This method is the "most conventional." Foster-Miller, 46 F.3d at 145. See also Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

When determining "whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" Swiss Am. Bank, 274 F.3d at 619 (quoting United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). Nevertheless, the determination of a prima facie showing "must be based upon evidence of the specific facts set forth in the record," and it must "go beyond the pleadings and make affirmative proof." Id. See also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994) (Courts should "tak[e] facts affirmatively alleged by plaintiff as true and constru[e] disputed facts in the light most hospitable to plaintiff" but should "not credit conclusory allegations or draw farfetched inferences.")

**(2) Specific Personal Jurisdiction**

In order for a court to exercise personal jurisdiction, due process demands that the defendant have "certain minimum contacts with the forum state such

6

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Copia Commc'ns, LLC v. AMResorts, L.P.</u>, 812 F.3d 1, 4 (1st Cir. 2016) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). The First Circuit has spelled out a three-part test for plaintiffs seeking to show the minimum contacts to establish specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

<u>Id</u>. (quoting <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 27 (1st Cir. 2008)).  I analyze how each part of this test applies to the defendant Underwater Lights.  But first I observe that the First Circuit says that contract and tort claims should be analyzed "discretely [because q]uestions of specific jurisdiction are always tied to the particular claims asserted," and the elements of a contract cause of action differ from the elements of a tort cause of action.  <u>Phillips Exeter Academy v. Howard Phillips Fund</u>, 196 F.3d 284, 289 (1st Cir. 1999).  The claims against Underwater Lights constitute a conventional products liability case, and I treat the claims as tort claims.  (But if the breach of warranty claim were treated as a contract claim, my conclusion would be the same.)  For tort claims, I must "probe the causal nexus between the defendant's contacts and the plaintiff's cause of action."  <u>Id</u>.  The First Circuit also requires that I examine only contacts occurring before and during the events in question.  <u>See</u> <u>Carreras v. PMG Collins,</u>

LLC, 660 F.3d 549, 554 (1st Cir. 2011) (citing Harlow v. Children's Hosp., 432 F.3d 50, 61-62 (1st Cir. 2005).

### (a) Relatedness

The relatedness factor requires a plaintiff to demonstrate a nexus between its claims for relief and the defendant's forum-based activities.  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016).  Because this prong of the test requires evidence that the plaintiff's claim "arises out of, or relates to defendant's contacts with the forum state" the relatedness prong "is the divining rod that separates specific jurisdiction cases from general jurisdiction cases." Ticketmaster, 26 F.3d at 206-07 (internal quotations omitted).  The First Circuit has called this a "flexible, relaxed standard, as suggested by the disjunctive nature of the requirement." Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (internal quotations omitted).  But "[a]lthough this is a 'relaxed standard,' it nevertheless requires [courts] to hone in 'on the relationship between the defendant and the forum.'" A Corp., 812 F.3d at 59 (quoting Hannon v. Beard, 524 F.3d 275, 283 (1st Cir. 2008).  When examining the relatedness prong, courts must reject "the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." Harlow, 432 F.3d at 61.  "A broad 'but-for' argument is generally insufficient.  Because 'but for' events can be very remote, due process demands something like a 'proximate cause' nexus." Id. (internal quotations omitted).

"The relatedness inquiry for tort claims focuses on whether the defendant's in-forum conduct caused the injury or gave rise to the cause of action." Swiss

Am. Bank, 274 F.3d at 622 (emphasis in original).  The plaintiff here has not shown that Bonner's and Flowers Boatworks's use of an Underwater Lights product resulted from Underwater Lights's website or its magazine advertising or its presence at trade shows.  It also has not shown a connection between this use of Underwater Lights's products and the earlier single sale of lighting cable directly into Maine or the billing to Maine's Hamilton Marine for shipping lights to a Florida resort location.  The only forum-based conduct that relates to the plaintiff's claim here is the fact that Underwater Lights puts its products into the stream of commerce by selling them to Hella, hoping and intending that they will be purchased throughout the country and internationally.  There is no question that the sale and installation of the alleged defective product in Maine was the proximate cause out of which this lawsuit arose.  But if the product was defective, that tortious conduct occurred in Florida where the lights are manufactured.  In analyzing a tort claim for breach of fiduciary duty, the First Circuit has said that the "breach of fiduciary duty occurs where the fiduciary acts disloyally." Phillips Exeter, 196 F.3d at 291.  There, the issue was artificially low payments to a New Hampshire private school.  The First Circuit said that "the receipt of payment [in New Hampshire] was merely an in-forum effect of an extra-forum breach and, therefore, inadequate to support a finding of relatedness." Id.  Likewise here, if the light was defectively manufactured in Florida causing Bonner's boat to sink in New York, its incorporation into the boat in Maine was "merely an in-forum effect of an extra-forum breach."  Like the Phillips Exeter case, I cannot conclude that the plaintiff has demonstrated a prima facie showing of relatedness.  See also A Corp., 812 F.3d at 60 ("This type

of indirect effect of out-of-state injury caused by out-of-state conduct is insufficient to fulfill the relatedness prong.")

But unlike <u>Phillips Exeter</u>, this is a "stream of commerce" case. This District has said that "neither the Supreme Court nor the Court of Appeals for the First Circuit has expressed concern about the causal link in cases analyzing the stream-of-commerce theory of personal jurisdiction. Rather, in these cases, the jurisdictional hitch comes from the requirement of purposeful availment." <u>Amburgey v. Atomic Ski USA, Inc.</u>, No. 2:06-CV-149-GZS, 2007 WL 1464380 at *2 (D. Me. May 17, 2007) (quoting <u>Unicomp, Inc. v. Harcros Pigments, Inc.</u>, 994 F. Supp. 24, 26 (D. Me. 1998)). I therefore will proceed to consider purposeful availment as well.

### (b) Purposeful Availment

#### (i) Background—Stream of Commerce

If Underwater Lights had sold the lighting fixtures at issue in this case directly to a retailer or customer in Maine, there would be no question that it purposely availed itself of the Maine forum. But because it sold the light fixtures that ended up in Bonner's boat to a Georgia distributer (Hella), the question whether specific jurisdiction exists is addressed by a line of cases that make up what is sometimes called the "stream of commerce" theory of jurisdiction. <u>See</u> 4 Wright, Miller, and Steinman, <u>Federal Practice and Procedure</u> § 1067.4 (4th ed. 2015).

In <u>Asahi Metal Ind. Co., Ltd. v. Superior Court of California</u>, 480 U.S. 102 (1987), the Supreme Court was sharply divided on the question of purposeful availment in a stream of commerce case. <u>Asahi</u> was a products liability case

where the original plaintiff claimed that he was injured due to a defective tire on

his motorcycle.  Id. at 106.  In turn, the Taiwanese manufacturer of the tire

claimed that the tire's failure was due to a defective tire valve sold to it by a

Japanese producer, Asahi Metal.   Id.   Ultimately the Supreme Court

unanimously agreed that personal jurisdiction over the Japanese producer was

lacking under a "reasonableness" analysis (discussed below). But on the issue of

purposeful availment, Justice O'Connor stated on behalf of four members of the

Court:

> The placement of a product into the stream of commerce, *without more*, is not an act of the defendant purposefully directed toward the forum State.  Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Id. at 112 (emphasis added).  Justice Brennan, writing for four other members

of the Court, did not believe that "additional conduct" needed to be directed at

the forum to establish personal jurisdiction, as long as the manufacturer was

participating in the "regular and anticipated flow of products from manufacture

to distribution to retail sale."  Id. at 117 (Brennan, J., concurring).[4]

---

[4] The ninth Justice, Justice Stevens, did not believe that purposeful availment needed to be addressed in Asahi.  Asahi Metal Ind. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 121-22 (1987) (Stevens, J., concurring).

Five years later, the First Circuit endorsed Justice O'Connor's "without more" requirement. In finding no purposeful availment in <u>Boit</u>, 967 F.2d at 683, the First Circuit stated:

> There is no evidence that [the defendant] designed the product for Maine, advertised in Maine, established channels for providing regular advice to customers in Maine, or marketed the product through a distributor who had agreed to serve as a sales agent in Maine. Accordingly, because "mere awareness" that a product may end up in the forum state does not constitute "purposeful availment," the district court could not have constitutionally exercised personal jurisdiction over [the defendant].[5]

In 2011, the Supreme Court addressed the purposeful availment requirement in stream of commerce cases, but once again failed to produce a majority opinion. In <u>J. McIntyre Machinery, Ltd. v. Nicastro</u>, 564 U.S. 873 (2011), a New Jersey scrapyard employee injured his hand on a shearing machine manufactured by J. McIntyre Machinery, a British corporation. <u>Id</u>. at 878. The British manufacturer did not sell any of its machines directly to buyers in the United States, but instead used an independent American distributor. <u>Id</u>. Some officials from J. McIntyre attended trade shows in the United States, and the J. McIntyre machine that caused the injury was one of up to four machines that made its way into New Jersey. Writing for a four-member plurality, Justice Kennedy found that these facts were not enough to establish purposeful availment. <u>Id</u>. at 883-87. In rejecting Justice Brennan's <u>Asahi</u> approach, Justice Kennedy wrote:

> The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. . . . Sometimes a defendant does so by sending its goods rather than its agents. The defendant's

---

[5] As will appear later, I conclude that <u>Boit</u>'s observations apply to this case.

12

> transmission of goods permits the exercise of jurisdiction
> only where the defendant can be said to have *targeted* the
> forum; as a general rule, it is not enough that the defendant
> might have predicted that its goods will reach the forum
> state.

Id. at 882 (emphasis added).  This inquiry, the plurality stated, requires a "forum-by-forum" or "sovereign-by-sovereign" analysis.[6]   Id. at 884.   Justice Breyer's concurrence (joined by Justice Alito), declared that J. McIntyre was "an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules."   Id. at 890 (Breyer, J., concurring).   In describing why he thought the state court was wrong in finding the existence of personal jurisdiction, Justice Breyer noted:

> Here, the relevant facts found by the New Jersey Supreme
> court show no "regular flow" or "regular course" of sales in
> New Jersey; and there is no "something more," such as
> special state-related design, advertising, advice, marketing,
> or anything else.  [The plaintiff,] who here bears the burden
> of proving jurisdiction, has shown no specific effort by the
> British Manufacturer to sell in New Jersey.  He has
> introduced no list of potential New Jersey customers who
> might, for example, have regularly attended trade shows.
> And he has not otherwise shown that the British
> Manufacturer "purposefully availed itself of the privilege of
> conducting activities" within New Jersey, or that it delivered
> its goods in the stream of commerce "with the expectation
> that they will be purchased" by New Jersey users.  There may
> well have been other facts that [the plaintiff] could have
> demonstrated in support of jurisdiction. . . .    But the
> plaintiff bears the burden of establishing jurisdiction, and
> here I would take the facts precisely as the New Jersey
> Supreme Court stated them.

Id. at 889-90.[7]

---

[6] Both Asahi and J. McIntyre involved foreign companies, but the same principles apply when looking at parties from two different states.  J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 884-85 (2011).

[7] Justice Ginsburg's dissent in J. McIntyre, joined by Justices Sotomayor and Kagan, hewed much closer to Justice Brennan's reasoning in Asahi.  J. McIntyre, 564 U.S. at 893 (Ginsburg, J., dissenting).

### *(ii) Applying Purposeful Availment to Underwater Lights*

"In the purposeful availment inquiry the focus is on the defendant's intentions, and the cornerstones are voluntariness and foreseeability.  The defendant's contacts 'must be deliberate, and not based on the unilateral actions of another party.'" Bluetarp Fin., Inc. v. Matrix Const. Co., Inc., 709 F.3d 72, 82 (1st Cir. 2013) (quoting Phillips, 530 F.3d at 28) (internal citations omitted). "This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, 274 F.3d at 624.

In this case, Underwater Lights had no physical presence in Maine and did not regularly contract to supply services or products in Maine or derive substantial revenue from goods or services sold in Maine.  But it did not limit its marketing strategy to any specific region in the United States, and its sales office was equipped to handle all domestic sales.  UL Dep. at 13, 16.  Its employees attended various trade shows around the country (not in Maine), id. at 7-10, and the company placed advertisements in national boating magazines, id. at 12, 15. Each of these actions imply that Underwater Lights, not just its distributer Hella, made affirmative attempts to enter the market everywhere across the United States (and abroad).  Underwater Lights took these actions voluntarily.  But they were not targeted specifically at Maine and do not show a benefit received from Maine-directed activities other than one $300 sale of lighting cable, the unexplained fact that Maine's Hamilton Marine once paid for fixtures shipped within Florida, and the Bonner transaction.

Underwater Lights also maintained a website.  In <u>Cossaboon v. Maine Med. Ctr.</u>, 600 F.3d 25, 35 (1st Cir. 2010), a general jurisdiction case, the First Circuit drew a line between websites that are "primarily informational" and those that "sell or render services online."  Although in 2012 Underwater Lights's website did not provide a method for customers to order items directly by credit card, the website's "Contact Us" page included the sales office email address and an optional form to provide information about customers' boats, thus providing an opportunity for customers from around the nation to request a purchase.  UL Dep. at 18.  The website provided promotional photos of Underwater Lights's products in use all over the world, including in the northeast United States.  UL Website at 2, 4, 6-8.  The website also listed products with specific pricing information.  <u>Id</u>. at 40.  Thus, Underwater Lights's website was not "primarily informational," but the company also was not "clearly do[ing] business over the internet."  The plaintiff has produced no evidence that the website had anything to do with the decision to incorporate Underwater Lights products into the Bonner boat.

The single direct sale of lighting cable into Maine and one payment from a Maine company for a shipment within Florida are scant evidence to demonstrate "efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States."  <u>Dalmau Rodriguez v. Hughes Aircraft Co.</u>, 781 F.2d 9, 14 (1st Cir. 1986) (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).  Instead, they qualify as "isolated occurrence[s]" that without more are insufficient.  <u>Id</u>.

In sum, there is no evidence that the claims in this lawsuit arose out of Underwater Lights's website, its earlier isolated sale of lighting cable to a Maine business, or its receipt of payment from a Maine company for a Florida shipment. The only evidence relevant to specific personal jurisdiction is that Flowers Boatworks bought lights from Hamilton Marine in Maine, that Hamilton Marine bought them from Hella in Georgia, and that Hella purchased them from Florida manufacturer Underwater Lights.  I conclude that in its stream of commerce argument, the plaintiff has failed to demonstrate the "something more" alluded to by Justice O'Connor in Asahi, 480 U.S. at 112 (referring to "without more"), by the First Circuit in Boit, 967 F.2d at 683 ("without more") and Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 85 (1st Cir. 1997) (stream of commerce "without more" is insufficient for purposeful availment), and by Justice Breyer in J. McIntyre, 564 U.S. at 889 ("something more") (Breyer, J., concurring).[8]  As a result, the plaintiff has failed to meet the second factor, the purposeful availment requirement.  Although that is sufficient to dispose of this case, A. Corp., 812 F.3d at 61-62, to be thorough I will also examine the third factor.

---

[8] Justice Breyer's observations about New Jersey in J. McIntyre apply to the situation here regarding Maine:

> No "regular flow" or "regular course" of sales in [Maine]; and there is no "something more," such as special state-related design, advertising, advice, marketing, or anything else.  [The plaintiff,] who here bears the burden of proving jurisdiction, has shown no specific effort by the [Florida] Manufacturer to sell in [Maine].  He has introduced no list of potential [Maine] customers who might, for example, have regularly attended trade shows.  And he has not otherwise shown that the [Florida] Manufacturer "purposefully availed itself of the privilege of conducting activities" within [Maine], or that it delivered its goods in the stream of commerce "with the expectation that they will be purchased" by [Maine] users.

564 U.S. 889 (Breyer, J., concurring) (internal citations omitted).  I have substituted Maine for New Jersey and Florida for British in the quotation.  The Underwater Lights situation also fits the First Circuit's observations in Boit, see page 12 & note 5 supra.

### (c) Reasonableness

International Shoe's requirements of "fair play and substantial justice," 326 U.S. at 320, require that a court's exercise of jurisdiction be reasonable. See also Asahi, 480 U.S. at 113-14. The reasonableness prong requires courts to consider five factors:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

A Corp., 812 F.3d at 61. These are often referred to as the "gestalt factors." See, e.g., Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 717 (1st Cir. 1996). "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. In such cases the gestalt factors may tip the constitutional balance." Id. When a plaintiff's evidence concerning relatedness and purposeful availment is fairly weak, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. (quoting Ticketmaster, 26 F.3d at 210). However, "[t]he reverse is equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." Id. With this in mind, I examine each of the gestalt factors.

### (i) The Defendant's Burden of Appearance

It is more burdensome for Underwater Lights to have to defend this case in Maine rather than in its home state of Florida. But simply having to defend oneself in a forum other than one's home is not enough. The First Circuit has

said that, "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). The First Circuit has not found such a special burden when requiring a defendant to travel from New York to Puerto Rico, id., or even from Hong Kong to Massachusetts, Nowak, 94 F.3d at 718, and I find only a modest burden on the Florida defendant Underwater Lights to defend itself in Maine.

### (ii) Maine's Interest in Adjudicating the Dispute

The task under this factor is not to compare the interests of the two potential forums, "but to determine whether the forum state *has* an interest." Nowak, 94 F.3d at 718. (emphasis in original). In this case, the alleged tortious injury did not occur within Maine's borders. "Although a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished where the injury occurred outside the forum state." Id. (citing Ticketmaster, 26 F.3d at 211). But although the injury here occurred outside the forum, the sale and installation of the allegedly defective product did occur in Maine. Because Maine's economy has major boating interests, Maine "has a strong interest in protecting its citizens from out-of-state solicitations for [marine-related] goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." Id. I conclude that Maine has some interest in exercising jurisdiction in this case, even though the property loss occurred in New York.

### (iii)  The Plaintiff's Interest in Obtaining Relief

Old United, the plaintiff here, has no demonstrated connection to Maine and its courts.  But under this factor, courts should "accord deference" to a plaintiff's choice of forum.  Id.; Pritzker, 42 F.3d at 64.  Furthermore, Old United filed suit against Flowers Boatworks in addition to Underwater Lights.  Because Flowers Boatworks (now defaulted) was probably not subject to personal jurisdiction in Underwater Lights's home forum of Florida, Maine may have been the only forum where the plaintiff could litigate concurrently against both defendants.  This factor weighs in favor of personal jurisdiction.

### (iv)  The Administration of Justice

"This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy."  Nowak, 94 F.3d at 718.  In this case, this factor is indistinguishable from the previous factor.  Allowing the plaintiff to sue both defendants in the same forum promotes "the goal of judicial economy" and avoids "conjur[ing] up the chimera of inconsistent outcomes."  Pritzker, 42 F.3d at 64.

### (v)  The Common Interests of All Sovereigns in Promoting Substantive Social Policies

I have detailed Maine's interests in having this case decided in this forum.  Florida's interests are both ensuring that defective products are not manufactured in the state and in allowing its businesses to defend themselves in their home forum.  I conclude that Florida's interest is greater.

Overall, the gestalt factors tip slightly in favor of finding personal jurisdiction in this forum, but the advantage is weak.

CONCLUSION

Because I conclude that the plaintiff has failed to proffer enough evidence to satisfy the relatedness and purposeful availment requirements, the modest gestalt factors are not alone enough to justify personal jurisdiction under the case law.  As a result, there is no personal jurisdiction over Underwater Lights in Maine.

MOTION TO TRANSFER

In the event that I find no personal jurisdiction, the plaintiff has asked me to stay the claim against Flowers Boatworks[9] and to transfer the rest of the lawsuit to the Southern District of Florida, citing 28 U.S.C. § 1631.[10]  I interpret that as an implicit request to sever the claims against Flowers Boatworks from the claims against Underwater Lights.   At oral argument, the defendant Underwater Lights expressly consented to transfer of the claims against it.  Fed. R. Civ. P. 21 permits courts to "sever any claim against a party."  I find that it is "in the interest of justice" to do so in this case.

The First Circuit has recently held that "[28 U.S.C.] § 1631 permits transfer where personal jurisdiction is lacking."  Federal Home Loan Bank of Boston v. Moody's Investors Service, Inc., No. 14-2148, slip op. at 36 (1st Cir.

---

[9] All that remains on that claim is default judgment and logically that should not be determined until there is a resolution of the claim against Underwater Lights and a determination of damages.

[10] 28 U.S.C. § 1631 states:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

May 2, 2016).  Furthermore, it added that 28 U.S.C. § 1631 creates a "rebuttable presumption in favor of transfer" rather than dismissal.  Id. at 36-37.

I therefore **SEVER** the claims that the plaintiff Old United has brought against Flowers Boatworks and Underwater Lights.  I **Grant** the motion to transfer the action against Underwater Lights to the Southern District of Florida. The claim against Flowers Boatworks is **STAYED** until there is a resolution of the claim against Underwater Lights.  The parties shall notify this court every six (6) months concerning the status of the lawsuit in Florida.  Because I have transferred the claims that the plaintiff Old United brought against the defendant Underwater Lights, the defendant's motion to dismiss is **Moot**.

**SO ORDERED.**

**DATED THIS 3RD DAY OF MAY, 2016**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**